**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANDREW BLOCK, *individually and on behalf of all others similarly situated*, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| LIFEWAY FOODS, INC., an Illinois corporation, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff, ANDREW BLOCK, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, as and for his Complaint against Defendant, Lifeway Foods, Inc. ("Lifeway"), alleges the following based upon personal knowledge as to himself and his own action, and, as to all other matters, respectfully alleges, upon information and belief and investigation of his counsel, as follows (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

**NATURE OF THE ACTION**

1.      This is a class action case brought on behalf of all purchasers of Defendant Lifeway's Low Fat Kefir – Plain (unsweetened) (hereinafter the "Plain Kefir"). Through a fraudulent, unlawful, deceptive and unfair course of conduct, Defendant advertised, marketed, sold, and/or distributed Plain Kefir with the false representation that Plain Kefir is "99% lactose-free." In reality, according to independent lab tests, Plain Kefir contains about as much lactose as that commonly found in "2% milk" sold in the dairy aisle of grocery stores.

1

2.      Defendant's labels and advertisements for Plain Kefir, including the representations made on Defendant's website, are false, deceptive and misleading, and violate almost every state warranty, consumer protection, and product labeling law in the United States.

3.      Plaintiff now brings this proposed consumer class action on behalf of himself and all other persons nationwide, who from the applicable limitations period(s) up to and including the present, purchased for consumption and not for resale Defendant's Plain Kefir.  Defendant has deceived Plaintiff and other consumers nationwide.  Through Defendant's unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Plain Kefir that it would not have otherwise earned.  Plaintiff brings this action to stop Defendant's misleading practice.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than most Class Members.

5.      The Court has personal jurisdiction over Defendant because Defendant regularly conducts business in this District and/or under the stream of commerce doctrine.

6.      Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

7.      Plaintiff, Andrew Block, is a citizen of the State of Illinois residing in the City of Algonquin, and is a member of the Class defined herein.  Mr. Block and members of the Class suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices

2

of Defendant set forth in this Complaint.  Plaintiff Andrew Block and Class members would not have purchased the Plain Kefir had they known it was *not* "99% lactose free."

8.      Defendant, Lifeway, is an Illinois corporation with its principal office located in Morton Grove, Illinois.

## FACTUAL ALLEGATIONS

### *The Benefits of Products that Contain Little or No Lactose*

9.      Lactose is the main sugar found in milk and other dairy products.  Its absorption by the body occurs at the level of the small intestine and requires the presence of a sufficient quantity of intestinal lactase.

10.      According to the American Journal of Clinical Nutrition, cow milk, including whole, skim, low-fat and buttermilk, contains lactose in a range between 4 and 5%.

11.      There are a variety of health-related reasons for which a consumer chooses to purchase a dairy product that contains little or no lactose.

12.      It has been estimated that as much as 70% of the world's population has some degree of lactose intolerance, which means that they are unable to fully digest the lactose in milk and other dairy products.

13.      Individuals who are lactose intolerant have an adverse reaction to products containing lactose including abdominal bloating and cramps, flatulence, diarrhea, nausea, borborygmic, and vomiting.  Individuals vary in the amount of lactose they can tolerate.  The severity of the symptoms typically increases with the amount of lactose consumed.

14.      In addition to relieving the symptoms associated with "lactose intolerance," products that contain little or no lactose offer other benefits.  For example, lactose-free diets have

been said to help reduce exposure to added antibiotics and hormones, which have been linked to an increase in the risk of prostate, colon, lung, and breast cancers.

15.     Moreover, scientific studies suggest that cutting lactose from a person's diet may also improve the absorption of nutrients from other foods.

16.     Furthermore, avoiding lactose can also help a person follow a "vegan diet," which consumers may adhere to for ethical reasons, but also for the health benefits associated with such a diet.

17.     As one author explained, label reading is essential to determine how much lactose a product contains.  *See* Hargrove, James L.; Berdanier, Carolyn D. (1993). *Nutrition and gene expression. Boca Raton: CRC Press.*

### Lifeway Falsely Claims the Plain Kefir is "99% Lactose Free"

18.     Lifeway is a publicly traded American health food company headquartered in Illinois that sells products such as smoothie drinks, cheese products, and supplements.

19.     According to Lifeway, its mission is to provide the best probiotic and nutritious foods to improve the health of its customers.

20.     Lifeway directs and controls all significant aspects of the sale of its well-known products, including the manufacturing, marketing, packaging, distribution, and pricing.  The products are sold at thousands of stores throughout the United States and on consumer retail websites.

21.     Lifeway's flagship product line is "kefir".  According to Lifeway, kefir is a tart and tangy cultured milk smoothie that is high in protein, calcium, and vitamin D.  Consumers pay a premium for Lifeway's "kefir" products than they otherwise would if they purchased regular milk.

22.     Included within Lifeway's "kefir" product line is its Plain Kefir.  Lifeway falsely and deceptively advertises and markets its Plain Kefir, purportedly as an alternative to regular milk, as "99% lactose-free."

23.     In order to pump up sales of its "kefir" products, and, in turn, the price of the company's stock for its shareholders, Lifeway boasts on its website that its unique fermentation process and specific kefir cultures "ensure" that all of its kefir, including Plain Kefir, is 99% lactose-free:



24.     Similarly, with respect to Plain Kefir, Lifeway falsely claims on its website that it is "99% lactose-free":



25. Likewise, Lifeway packages the Plain Kefir with a label that falsely claims the product is "99% lactose-free."



26. Lifeway has even issued a statement that boasts why "[k]efir is 99% Lactose-Free." *See* http://lifewaykefir.com/why-our-kefir-is-99-percent-lactose-free/. In that statement, Lifeway guarantees to consumers that its kefir products are 99% lactose-free "when you drink it." *Id.*

27. Contrary to these representations, Plain Kefir is *not* "99% lactose free."

28. Moreover, Lifeway *knew* that Plain Kefir is not "99% lactose free" and that its labeling, advertising, and/or marketing was false and misleading.

29. The consumer watchdog group ConsumerLab.com tested the lactose content of Lifeway's Plain Kefir and reported that it contained about 8 grams of lactose per cup, which means

that it is actually closer to 4% lactose – **only slightly lower than the lactose content percentage of that which is found in milk**.

30.     Moreover, a study at the Ohio State University - ***funded by Lifeway*** - disclosed that Lifeway's Plain Kefir contained approximately 4% lactose, consistent with Consumer Lab's findings.[1]

31.     Further, Plaintiff's counsel had the Plain Kefir tested and that test also confirmed, consistent with Consumer Lab's findings, that Lifeway's Plain Kefir is not "99% lactose free," and instead contains close to 4% lactose.

32.     Despite clear evidence to the contrary, Lifeway falsely and misleadingly marketed, advertised, packaged, and/or sold Plain Kefir to Plaintiff and the general public as "99% lactose free."  The only conceivable purpose for falsely claiming the product is "99% lactose free" is to stimulate sales and enhance Lifeway's profits.

33.     Consumers are particularly vulnerable to these kinds of false and deceptive marketing practices.  Most consumers are unable to verify that products such as Lifeway's Plain Kefir are, in fact, "99% lactose free."  As set forth above, this is a material factor in consumers' purchasing decisions.  Because of Lifeway's deceptive advertising practices, consumers were fraudulently induced to purchase Lifeway's Plain Kefir.

34.     Defendant's statements violate 21 U.S.C. § 343(a)(1), which deems food misbranded when the label contains a statement that is "false or misleading in any particular."

35.     Moreover, the State of Illinois has expressly adopted the federal food labeling requirements as its own, and has indicated that "[t]he Director is authorized to make the regulations promulgated under this Act conform, in so far as practicable, with those promulgated under the

---

[1] *See* Hertzler, J. Am Dietic Assoc. 2003.  *Lifeway improves lactose digestion and tolerance in adults with lactose maldigestion.*

Federal Act." 410 ILCS 620/21(a). Additionally, under Illinois law, "[a] federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." 410 ILCS 620/21(j). Thus, a violation of federal food labeling laws is an independent violation of Illinois law and actionable as such.

36.     The Illinois legislature has adopted the exact language of the FDCA in 410 ILCS 620/11 by stating, "[a] food is misbranded - (a) If its labeling is false or misleading in any particular." Accordingly, Defendant's statements also violate Illinois law.

37.     This lawsuit is not the first instance in which Lifeway has been accused of deception in the marketing and labeling of its goods. In 2013, a lawsuit was filed claiming that a sugar ingredient was unlawfully identified on the labels of Lifeway's "kefir" yogurt drinks under California state law. *See Robert E. Figy v. Lifeway Foods Inc.*, Case No. 13-cv-04828, U.S. District Court, Northern District of California. Similarly, a 2012 Illinois lawsuit alleged that the company labeled various "kefir" products as containing benefits for various health conditions even though those claims had not been approved by the Food and Drug Administration. *See Keatley v. Lifeway Foods, Inc.*, Caser No. 12-cv-3521 in the U.S. District Court, Northern District of Illinois. In fact, the FDA has previously warned Lifeway about mislabeling its kefir products. *See* Exhibit A. It is clear that Lifeway has a history of problems with advertising and the accuracy of its labels. Without injunctive relief, consumers – including Plaintiff – could easily fall prey to such deceptive marketing tactics in the future.

### *Plaintiff's Experience with Lifeway's Plain Kefir*

39.     Plaintiff purchased a 32-ounce bottle of Lifeway's Plain Kefir for his own use during the four years preceding the filing of this Complaint at a local grocery store in Illinois. He paid approximately $2.99 for his 32-ounce bottle of Plain Kefir.

8

40.     When Plaintiff purchased the Plain Kefir, he relied upon Lifeway's aforementioned representations that the Plain Kefir is "99% lactose free".  Similarly, when Plaintiff purchased the Plain Kefir, he purchased it for all the reasons described above.

41.     Plaintiff later learned that Lifeway's Plain Kefir is not "99% lactose free."  Plaintiff was deceived as a result of Lifeway's false and misleading marketing practices.  Plaintiff believed he was buying a product that was "99% lactose free" when, in reality, he was purchasing a product that contained nearly as much lactose as that of regular milk.

*Lifeway Harmed Plaintiff in a Manner Identical*
*To the Manner in Which Lifeway Harmed the Class*

42.     Plaintiff is in the same Class as all other consumers who purchased Lifeway's Plain Kefir during the relevant time period.  Plaintiff and the Class members were in fact misled by Defendant's misrepresentations in respect to the Plain Kefir.  Plaintiff and Class members would have purchased other "99% lactose free" products, if any at all, if they had not been deceived by the misleading and deceptive labeling and advertising of the product by Lifeway.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

44.     Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.  The class definition(s) may depend on the information obtained throughout discovery.  Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

**National Class:**  All persons within the United States who purchased the Plain Kefir from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

**Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Missouri, New Hampshire, New Jersey, New York, Rhode Island, and Wisconsin who purchased the Plain Kefir from the beginning of any applicable limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").[2]

**Illinois Sub-Class:** All persons in Illinois who purchased the Plain Kefir from the beginning of any applicable limitations period through the date of class certification (the "Illinois Sub-Class").

45.  Excluded from the Class is the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

46.  Plaintiff reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

47.  Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

48.  **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class Members number in at least the thousands. The precise number of Class Members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

---

[2] The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, prohibits both unfair and deceptive business acts and practices on the part of entities conducting business with consumers within the State of Illinois. The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California; Florida; Illinois; Massachusetts; Michigan; Missouri; New Hampshire; New Jersey; New York; Rhode Island; and Wisconsin.

49.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Such common questions of law or fact include:

      a.      Whether the Plain Kefir is "99% lactose free";

      b.      Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Plain Kefir are deceptive;

      b.      Whether Lifeway's actions violate the state consumer fraud statutes invoked below;

      c.      Whether Lifeway breached an express warranty to Plaintiff and Class Members; and

      d.      Whether Lifeway was unjustly enriched at the expense of Plaintiff and Class Members.

50.     Lifeway engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of himself and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

51.     **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, all Class Members were comparably injured through Lifeway's uniform misconduct described above. Further, there are no defenses available to Lifeway that are unique to Plaintiff or to any particular Class Members.

52.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiff is an adequate Class representative because his interests do not conflict with the interests

of the other Class Members he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

53. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1)**. Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Lifeway. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

54. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

55. **Superiority – Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Lifeway, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could

afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### Count I

### Violation of the State Consumer Fraud Acts
### (On Behalf of the Consumer Fraud Multi-State Class)

56.     Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

57.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

58.     Plaintiff and the other members of the Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class because Plaintiff and members of the Class have suffered an injury in fact and lost money as a result of Lifeway's actions set forth herein.

59.     Lifeway intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

60.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

61. In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**Count II**

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**(In the Alternative to Count I and on behalf of the Illinois Sub-Class)**

62. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

63. The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq*., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purposes. 815 ILCS 505/11a.

64. Lifeway's conduct in representing its product as "99% lactose free" constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

65. Lifeway intended that Plaintiff and each of the members of the Illinois Sub-Class would rely upon Lifeway's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

66. Lifeway knew or should have known that its representations of fact concerning the Plain Kefir are material and likely to mislead consumers.

67. Lifeway's practices, acts, and course of conduct in marketing and selling the Plain Kefir are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, members of the Illinois Subclass would not have purchased the Plain Kefir had they known that it was not "99% lactose free."

68.     Plaintiff and members of the Illinois Subclass have been directly and proximately damaged by Lifeway's actions.

69.     As a result of the Lifeway's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Illinois Subclass have sustained damages in an amount to be proven at trial.

70.     In addition, Lifeway's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

### Count III

### Breach of Express Warranties
### (On behalf of the National Class and the Illinois Sub-Class)

71.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

72.     Plaintiff brings this claim against Lifeway on behalf of himself, the National Class, and the Illinois Subclass (for purposes of this Count, the "Classes").

73.     Plaintiff and each member of the Classes formed a contract with Lifeway upon purchasing the product.  The terms of the contract included the promises and affirmations of fact made by Lifeway on the Plain Kefir's packaging and through marketing and advertising, as described above.  This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between Plaintiff and the members of the Classes, on the one hand, and Lifeway, on the other.

74.     Plaintiff and the members of the Classes performed all conditions precedent to Lifeway's liability under this contract when they purchased the Plain Kefir.

75.     Lifeway breached express warranties about the Plain Kefir and its qualities because Lifeway's statements about the Plain Kefir were false and the product does not conform to Lifeway's affirmations and promises described above.

76.     Plaintiff and the members of the Classes would not have purchased the Plain Kefir had they known that it was not "99% lactose free."

77.     As a result of Defendant's breach of warranty, Plaintiff and each member of the Classes has been damaged in an amount equal to the purchase price of the product and any consequential damages resulting from their purchases.

78.     Plaintiff and the Classes were not required to notify Lifeway of its breaches because affording Lifeway a reasonable opportunity to cure its breaches would have been futile. Indeed, after Lifeway was put on notice by a study *funded by Lifeway*, which disclosed that Lifeway's Plain Kefir was not "99% lactose free," Lifeway refused to acknowledge the aforementioned breaches and did not take any attempts to cure the breaches.

**Count IV**

**Negligent Misrepresentation**
**(On Behalf of the National Class and the Illinois Sub-Class)**

79.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

80.     Defendant has made material misrepresentations of fact concerning the nature of the Product.

81.     Defendant has and had no reasonable basis for believing that its misrepresentations were true. Defendant knew, or should have known, that Plaintiff and the members of the National Class and the Illinois Sub-Class would rely on the false representations about the nature of the

16

Plain Kefir.  Defendants' false representations about the Plain Kefir are objectively material to reasonable consumers, and therefore reliance upon such representations may be presumed.

82.     Plaintiff and members of the National Class and the Illinois Sub-Class reasonably relied to their detriment on Defendant's false representations, which caused them to purchase the Plain Kefir.

83.     As a proximate result of Defendant's negligent misrepresentations, Plaintiff and each member of the National Class and the Illinois Sub-Class has been damaged in the amount of the purchase price of the Plain Kefir and any consequential damages resulting from their purchases.

**Count V**

**Unjust Enrichment**
**(In the Alternative to Count III and on**
**Behalf of the National Class and the Illinois Sub-Class)**

84.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

85.     Plaintiff brings this claim against Lifeway on behalf of himself, the National Class, and the Illinois Subclass (for purposes of this Count, the "Classes").

86.     Plaintiff and the other members of the Classes conferred benefits on Lifeway by purchasing the Plain Kefir.

87.     Lifeway has been unjustly enriched in retaining the revenues derived from the purchases of the Plain Kefir by Plaintiff and the other members of the Classes.  Retention of those monies under these circumstances is unjust and inequitable because Lifeway's labeling of the Plain Kefir was misleading to consumers, which caused injuries to Plaintiff and the other members of the Classes because they would not have purchased the product had they known the true facts, that the Plain Kefir was not "99% lactose free."

88. Because Lifeway's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other members of the Classes for its unjust enrichment, as ordered by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B. Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C. Ordering Defendant to pay actual damages to Plaintiff and the other members of the Classes;

D. Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Classes;

E. Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiff and the other members of the Classes;

F. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Classes;

G. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H.    Ordering Defendant to pay restitution to Plaintiff and the other members of the Classes; and

I.    Ordering such other and further relief as may be just and proper.

Dated: March 3, 2017                    Respectfully submitted,

                                        ANDREW BLOCK


                                        /s/ Gary M. Klinger
                                        Gary M. Klinger (ARDC # 6303726)
                                        Ryan F. Sullivan (ARDC # 6314103)
                                        **KOZONIS LAW, LTD.**
                                        4849 N. Milwaukee Ave., Ste. 300
                                        Chicago, Illinois 60630
                                        Phone: 773.545.9607
                                        Fax: 773.496.8617
                                        gklinger@kozonislaw.com
                                        rsullivan@kozonislaw.com

                                        *Attorneys for the Plaintiff, the Putative*
                                        *Classes, and Subclass*