# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANDREW BLOCK, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiff,<br> v.<br><br>LIFEWAY FOODS, INC., an Illinois corporation,<br><br>    Defendant. | Case No. 1:17-cv-01717<br><br>Hon. Matthew F. Kennelly |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

## I. INTRODUCTION AND BACKGROUND

As alleged in the First Amended Class Action Complaint ("Complaint" or "Complt."), Defendant labeled, advertised, marketed, and sold its Low Fat Kefir – Plain (unsweetened) ("Plain Kefir") by prominently and repeatedly claiming, falsely, that it was "99% lactose free." (*See* Complt., ¶¶ 17-26.) However, Plain Kefir is not "99% lactose free" as advertised by Defendant; instead, as three separate tests have confirmed, Plain Kefir contains close to 4% lactose and Defendant was aware of this fact as early as 2003. (*Id.* at ¶¶ 29-31.) Based on Lifeway's false representations, which continue even now, Plaintiff chose to pay a premium to purchase Plain Kefir because of the benefits of drinking products that contain little or no lactose (regular milk, for example, contains about 4-5% lactose but costs a fraction of the price). (*Id.*; *see infra* at pp. 10-12.) Plaintiff would not have purchased or paid a premium for Plain Kefir if it was not "99% lactose free." (*Id.*) Those facts notwithstanding, Defendant argues that it should not be held liable under any of the Counts asserted in the Complaint. However, all of Defendant's arguments are flawed.

Defendant argues that Plaintiff's multi-state consumer fraud claims should be dismissed because Plaintiff lacks standing to pursue claims on behalf of class members in other states under those states' laws. However, the Seventh Circuit has already endorsed Plaintiff's ability to bring such claims. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011). In this Circuit, a plaintiff who has standing as to their personal claims, also has standing to bring claims on behalf of a class even if some of those class members seek recovery under the laws of states in which the named plaintiff does not reside. In arguing otherwise, Defendant conflates Article III standing with the typicality, commonality and predominance inquiries required by Rule 23, which are not addressed at the pleading stage.

Defendant also argues that Plaintiff cannot bring a nationwide class action under the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA") because plaintiffs who suffer injuries out-of-state cannot sue under the ICFA. This contention is incorrect. Out-of-state plaintiffs may sue under the ICFA where, as here, the "bulk of the circumstances" related to Defendant's conduct in the underlying transaction occurred in Illinois, even if the injury did not. Here, the "bulk of the circumstances" related to Defendant's conduct occurred in Illinois.

Defendant further contends that Plaintiff fails to plead prima facie ICFA and common law fraud claims. First, Defendant argues that Plaintiff's ICFA claim is merely a breach of contract claim. However, Plaintiff alleges significant extra- and pre-contractual misrepresentations by Defendant, and courts regularly allow consumer fraud claims in food mislabeling cases because they raise consumer protection concerns. Second, Defendant argues that causation and damages were not pled. However, Plaintiff expressly alleges that he relied on Defendant's false representations regarding lactose content and paid a premium for Plain Kefir in reliance on those representations.

Defendant also argues that Plaintiff's breach of warranty claims fail because Plaintiff does not allege proper notice. But, Plaintiff was not required to provide notice, because: (1) he alleged that Defendant had actual knowledge that its representations for all Plain Kefir were false; and (2) this case involves food labeling. Finally, Defendant's privity, unjust enrichment and injunctive relief arguments have no merit.

For these reasons, discussed more fully below, Defendant's Motion should be denied.

## II. RULE 12(b)(6) STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a

Rule 12(b)(6) motion to dismiss, a court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). For a non-fraud claim to survive a Rule 12(b)(6) motion, the complaint need only be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For fraud claims, the plaintiff need only provide a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role in the fraud" to satisfy Rule 9(b). *Goldberg v. Rush Univ. Med. Ctr.,* 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013), *citing Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.1992).

### III. ARGUMENT

#### A. Defendant's Standing Argument is Premature and Should be Rejected.

Defendant argues that Plaintiff lacks standing to sue for violations of the laws of states where Plaintiff does not reside. (*See* Memo. at 4-6.) However, the Seventh Circuit has endorsed the opposite position. *See Morrison*, 649 F.3d at 536. Under *Morrison*, where, as here, subject matter jurisdiction is premised on diversity under the Class Action Fairness Act ("CAFA"), "[a]ll class members (no matter where they live) have an Article III controversy with [the defendant]" once the named plaintiff has established his own standing. *Id*.

In *Morrison*, the plaintiffs (including several non-Illinois residents) brought ICFA claims on behalf of a putative nationwide class. The Seventh Circuit held that although the out-of-state plaintiffs did not live in Illinois, and (potentially) were not injured in Illinois, they had standing because they were injured by the defendant's conduct and the court could redress that harm whether under the ICFA or under other states' consumer fraud laws. *See Morrison*, 649 F.3d at 536. The Court found that "[n]othing more is required for standing" and explained that a choice-

of-law analysis about whether other states' laws applied was not part of the standing analysis. *Id*. Other courts in this Circuit agree and treat arguments like the one Defendant advances here as premature. *See, e.g., In re Herbal Supplements Mktg. & Sales Practices Litig.*, 2017 WL 2215025, at *6 (N.D. Ill. 2017) (plaintiffs had standing to bring claims under laws of other states that they have no connection to because "plaintiffs similarly have established the elements of standing, and the Court agrees with the many courts that have concluded that Defendants' concerns are better left for the class-certification stage"); *McDonnell v. Nature's Way Prod., LLC*, 2017 WL 1149336, at *5 (N.D. Ill. 2017) (similar); *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1113 (E.D. Wis. 2016) (similar); *see also Supreme Auto Transp. LLC v. Arcelor Mittal*, 2017 WL 839484, at *2 (N.D. Ill. 2017); *Murillo v. Kohl's Corp.*, 2016 WL 3919555, at *11 (E.D.Wis. 2016); *Bietsch v. Sergeant's Pet Care Prod., Inc.*, 2016 WL 1011512, at *9 (N.D. Ill. 2016); *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015); *Cohan v. Medline Indus., Inc.*, 2014 WL 4244314, at *1 (N.D. Ill. 2014).

Here, Plaintiff alleges that Defendant misled Plaintiff and the putative class members into purchasing Plain Kefir that was not "99% lactose free," and that this Court can remedy that injury by ordering Defendant to pay damages. (Compl. ¶¶ 39-42, 67-72.) Accordingly, Plaintiff has standing, and the Court therefore should deny Defendant's motion to dismiss for lack of standing.

Defendant maintains that "Plaintiff's inability to pursue the state claims of non-resident, absent putative class members is highlighted by material variations in different states' law." (Memo. at 5.) However, this argument improperly conflates the Article III standing inquiry, which is properly considered at this stage, with the Rule 23 typicality, commonality, and predominance inquiries, which should be deferred until the Court considers Plaintiff's motion for class certification. In other words, Defendant's argument that Plaintiff lacks standing "to raise claims

4

under the [] state consumer protection laws other than Illinois's," is "more accurately characterized as an attack not on [Plaintiff]'s Article III standing *per* se ... but rather on his ability under Rule 23 to represent the multi-state class." *Halperin*, 123 F. Supp. 3d. at 1009. The issue is therefore "best deferred to the class certification stage." *Id.* (citing *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999)).

Defendant's cases support Plaintiff's position that the issue of whether plaintiffs may assert claims under other states' laws is an issue for the class certification stage – not the pleading stage. (*See* Memo. at 5, *citing In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) (deciding state law variance issues at class certification stage); *Block v. Abbott Labs.*, 2002 WL 485364, at *5 (N.D. Ill. 2002) (same); *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. 305 (S.D. Ill. 2007) (same).)[1]

**B.    Plaintiff May Allege ICFA Claims on Behalf of Non-Illinois Residents.**

Next, Defendant seeks dismissal of Count I of Plaintiff's Complaint asserted on behalf of the national class under the ICFA on the ground that "claims on behalf of non-Illinois residents who did not make an in-state purchase of Lifeway's Plain Kefir should be dismissed because they are not permitted under Illinois law." (Memo. at 6.)    This is not Illinois law.

Indeed, ICFA claims may lie even though the plaintiffs are out of state when they made purchases. *See, e.g., West v. Act II Jewelry, LLC,* 2016 WL 1073095, at *3 (N.D. Ill. 2016) (Iowa resident's ICFA class claim could proceed even though defendant "exclusively dealt" with plaintiff in Iowa); *Al Maha Trading & Contracting Holding Co. v. W.S. Darley & Co.*, 2014 WL 2459674,

---

[1] Once this issue is ripe, Defendant's argument will still fail. Courts in this Circuit routinely certify class actions involving multiple states' laws. *See e.g., Mednick v. Precor, Inc.,* 2017 WL 1021994, at *17 (N.D. Ill. 2017); *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 264 (S.D. Ill. 2015); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015) (affirming *Mullins v. Direct Digital, LLC*, 2014 WL 5461903 (N.D. Ill. 2014). Notably, Defendant fails to identify any state's law that would allow it to falsely claim that Plain Kefir is 99% lactose free.

5

at *10 (N.D. Ill. 2014) (allowing claim for plaintiff based in Saudi Arabia); *Morrison*, 649 F.3d at 537-38 (non-Illinois plaintiffs could bring ICFA claim despite making purchase while out of state because defendant's conduct occurred in Illinois).

Defendant cites to *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100 (2005) for the incorrect proposition that *Avery* categorically bars all causes of action under the ICFA when the purchase occurred out of state. However, the *Avery* court made clear that an out-of-state plaintiff can prove that a fraudulent transaction took place in Illinois sufficient to establish a claim under the ICFA when the "bulk of the circumstances" that made up the transaction occurred in Illinois even if the injury or deception took place out of state. *Avery*, 216 Ill.2d at 186.

As an initial matter, *Avery* does not hold that a party must satisfy the "bulk of the transaction" test in the pleadings or be subject to dismissal. *Avery* was addressing whether a class could be certified. *Id*. at 190. Indeed, in vacating a dismissal of an ICFA claim brought by non-Illinois class plaintiffs, the Seventh Circuit explained that the *Avery* test was "not exactly self-defining" and that the plaintiffs "need not do more than narrate a plausible claim for relief" and that, in the case before it, the court "did not take evidence, make findings of fact, or weigh the incommensurable factors in *Avery's* formula; it was not entitled to do any of these things on a motion to dismiss the complaint." *Morrison*, 649 F.3d at 538.

Even if the Complaint had to satisfy the *Avery* test, the "bulk of the circumstances" constituting the fraudulent transactions at issue took place in Illinois. It is not merely, as Defendant charges, that Defendant is headquartered in Illinois and that the fraudulent scheme (i.e. advertising, marketing, manufacturing, labeling, distributing and price setting of Plain Kefir) originated in Illinois, although both those are true, but also that Defendant's fraudulent representations were made from Illinois and directed at out-of-state residents to induce them to purchase Plain Kefir at

6

retail grocery stores and through consumer websites. (Complt., ¶¶ 17-26, 64.) Additionally, while the ultimate purchase may have occurred outside of Illinois, *all* of the relevant fraudulent conduct by ***Defendant*** took place in Illinois: "Defendant's deceptive practices involving the Plain Kefir were designed, established, and initiated from Defendant's marketing and sales agents located at Defendant's corporate headquarters in Illinois and were designed to be uniformly relied upon by consumers nationwide when they purchased the Plain Kefir." (Complt., ¶64.) At the pleading stage, this is enough to support an ICFA claim. *See Morrison*, 649 F.3d at 537-38 (dismissal vacated where plaintiffs alleged plausible ICFA claim despite plaintiffs being out-of-state when dealing with Illinois company because company's pyramid scheme was hatched in Illinois, regional meetings with plaintiffs were held in Illinois, and company received payments in Illinois)[2]; *West,* 2016 WL 1073095, at **2-3 (allowing ICFA claim for out of state purchasers where Defendant "formulated its alleged scheme to defraud Plaintiffs in its headquarters in Illinois" and "sent out the fraudulent communications via the internet from its Illinois headquarters.").[3]

Defendant's position also is markedly different than the fact pattern deemed insufficient to support an ICFA claim in *Avery*. There, "Avery's contact with State Farm was through a Louisiana agent, a Louisiana claims representative, and a Louisiana adjustor." *Avery*, 216 Ill. 2d at 178-79,

---

[2] The *Morrison* court also took note of the fact that complaints had to be sent to the company in Illinois. *Morrison*, 649 F.3d at 537. The same is true in this case. The court also noted that there was a choice of law provision in the operative contract but stated that it was not dispositive but merely a mark in Illinois' favor. *Id.*

[3] Other factors also present in *West* were that the defendant directed that communications be made to its headquarters in Illinois and that shipments of product were made from Illinois. While not presently pled in the Complaint, Defendant directs consumers to contact them by calling an Illinois telephone number or sending mail to Illinois. *See h*ttp://lifewaykefir.com/contact-us/. Defendant also manufactures its Plain Kefir in Illinois. If need be, Plaintiff can amend his complaint to include these allegations.

7

188. The Court found that "the overwhelming majority of circumstances relating to the disputed transactions in this case - State Farm's *claims practices* - occurred outside of Illinois." *Id*. Indeed, in *Avery*, the defendant's deceptive conduct took place almost entirely in another state. Here, in contrast, all of Defendant's fraudulent conduct occurred in ***Illinois***. And as Defendant's own cases have recognized, when Illinois is "where the actual misrepresentation was made," this supports a finding there is a claim under the ICFA. *See In re Sears Roebuck & Co. Tools Marketing and Sales Practice Litigation*, 2005 WL 3077606, *2 (N.D. Ill. 2005); *see also West*, 2016 WL 1073095, at *2.

The other cases relied on by Defendant are also off point because neither involves false representations being sent from Illinois to other states. *See Shaw v. Hyatt Int'l Corp.*, 2005 U.S. Dist. LEXIS 28250, at *6 (N.D. Ill. Nov. 15, 2005) (no fraudulent misrepresentation disseminated from Illinois regarding inflated Russian hotel room price); *Sears*, 2005 WL 3077606, at *2 (while the fraudulent scheme was alleged to have been formulated in Illinois, the complaint was silent as to whether the fraudulent representations themselves were sent to out-of-state consumers from Illinois).

For all these reasons, Defendant's motion to dismiss on this ground should be denied.

**C.      Plaintiff's Consumer and Common Law Fraud Claims are Sufficiently Pled.**

Defendant also contends that Plaintiff's ICFA and common law fraud claims are not sufficiently pled. (Memo. at 8-12.) As explained below, each argument lacks merit.

**1. The Existence of a Contract between Plaintiff and Defendant Does Not Affect Plaintiff's ICFA Claims.**

Defendant argues the ICFA claims in Counts I and III should be dismissed because they "rest on the same factual foundation" as Plaintiff's breach of express warranty claim and therefore are duplicative of one another. (Memo. at 8-9.) However, courts in this District routinely reject

this argument. *See, e.g. Gubala v. CVS Pharmacy, Inc.*, 2016 WL 1019794, at *17 (N.D. Ill. 2016) (no dismissal where complaint alleged not just a breach of contract but also that plaintiff was misled by label); *Pressalite Corp. v. Matsushita Elec. Corp. of Am.*, 2003 WL 1811530, at *7 (N.D. Ill. 2003) (similar); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2006 WL 3754823, at *3 (N.D. Ill. 2006) (similar).

While it is true the ICFA was not intended to apply to every contract dispute, that "does not mean that every case involving a contract fails to state a Consumer Fraud Act claim." *Gubala*, 2016 WL at *17. As the *Gubala* court explained:

> [T]he proper approach to distinguishing between garden variety breach of contract cases and cases involving a violation of the Consumer Fraud Act [is] as follows: where a plaintiff attempts to allege a violation of the Act in a case which appears on its face to involve only a breach of contract, the relevant inquiry is whether the alleged conduct implicates consumer protection concerns. **False labeling of food products raises a quintessential consumer protection concern**.

2016 WL 1019794, at *17 (internal quotation marks and citations omitted) (emphasis added).

Applying these standards, the Complaint alleges more than just a breach of contract and clearly involves consumer protection concerns. According to the Complaint, Defendant deployed a scheme to falsely and deceptively advertise, market and label the Plain Kefir as "99% lactose free" on its labels and website to induce Plaintiff to purchase Plain Kefir and to boost sales. (*See* Complt. ¶¶ 1-3, 25, 23, 33.) Plaintiff alleges that Defendant created a blog that falsely markets to consumers why Plain Kefir is 99% lactose free "when you drink it." (*Id.* at ¶ 26.) Plaintiff further alleges that Defendant knew that Plain Kefir was not "99% lactose free," and that Defendant intentionally concealed this information from the public in order to induce consumers to purchase Plain Kefir. (*Id.* at ¶¶ 25, 28-29, 32, 59.) These allegations are more than sufficient to state a claim under the ICFA despite the presence of a breach of contract claim.

9

## 2. Plaintiff Adequately Alleges Causation.

Defendant further argues that Plaintiff fails to allege causation. Not so. "[I]n a cause of action for fraudulent misrepresentation brought under the Consumer Fraud Act, a plaintiff must prove that he or she was actually deceived by the misrepresentation in order to establish the element of proximate causation." *Shannon v. Boise Cascade Corp.*, 208 Ill.2d 517 (2004). However, proximate cause allegations need only be "minimal, since that determination is best left to [the] trier of fact." *Muehlbauer v. General Motors Corp.*, 431 F.Supp.2d 847, 868-69 (N.D. Ill. 2006) (quotations omitted).

Here, Plaintiff has met his burden to plead causation and reliance. Plaintiff alleges that Defendant advertises Plain Kefir as "99% lactose free." (Complt., ¶¶ 10, 22, 25.) Plaintiff alleges that he chose to purchase and consume Plain Kefir because of the benefits to drinking products with little or no lactose. (*Id*. at ¶¶ 9-16.) He further alleges that he paid a premium for Plain Kefir because, for example, a 32-ounce bottle of Plain Kefir costs as much as a 128-ounce gallon of regular milk. (*Id*. at ¶ 21.) Plaintiff alleges that, notwithstanding Defendant's knowledge that Plain Kefir was not "99% lactose free," Defendant deployed a scheme to falsely and deceptively advertise, market and label the Plain Kefir as "99% lactose free." (*Id.* at ¶¶ 1-3, 25-26, 29 32.) Finally, Plaintiff alleges that when he purchased the Plain Kefir, he relied on all of these representations and would not have purchased or paid a premium for Plain Kefir had he not been deceived by the deceptive labeling and advertising of the product. (*Id*. at ¶¶ 39-42, 60.)

Based on these allegations, Plaintiff has adequately pled reliance and causation due to the misrepresentations. *See, e.g., Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 932 (N.D. Ill. 2015) (whiskey buyer alleging class action claim sufficiently alleged proximate cause of his injury where buyer had repeatedly purchased whiskey in reliance on false representations that

whiskey was a small-batch, unique recipe); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1334 (S.D. Fla. 2013) (causal connection alleged where plaintiff relied on false statements on label of milk carton and in advertisements on websites); *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 836 (N.D. Ill. 2008) (similar); *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 991 (N.D. Ill. 2013) (similar); *Greifenstein v. Estée Lauder Corp.*, 2013 WL 3874073, at *2–3 (N.D. Ill 2013) (similar).

Defendant's cases are distinguishable. In *Aliano v. Fifth Generation, Inc.*, 2015 WL 5675423, at *3 (N.D. Ill. 2015), the court found the plaintiff failed to allege proximate cause where the plaintiff generally alleged he reviewed "research" that caused him to purchase the defendant's product without offering anything more. In *Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825 (N.D. Ill. 2009), the plaintiff failed to allege proximate cause where he admitted he was not deceived by the company's advertising. Unlike those cases, Plaintiff here has alleged that he relied on, among other things, the deceptive labeling of the Plain Kefir when he made his purchase.

### 3. Plaintiff Adequately Alleges Damages.

Defendant also argues that Plaintiff failed to allege damages because, according to Defendant, "Plaintiff does not allege that he in fact paid more for the Plain Kefir because he believed that it was 99% lactose free or that Lifeway charges more for its Plain Kefir because it is 99% lactose free." (Memo. at 10-11.) Defendant is mistaken.

To satisfy the damages element, a plaintiff need only allege "actual pecuniary loss." *Muir*, 983 F.Supp.2d at 990 (citations omitted). Where "a consumer brings a private ICFA action, actual loss may occur if the seller's deception deprives the plaintiff of the benefit of her bargain by causing her to pay more than the actual value of the product." *Id.* (citations omitted).

Here, Plaintiff explicitly alleges that he prefers to buy products with little or no lactose and therefore he purchased Plain Kefir and "was willing to pay a premium because it was 99% lactose free." (Complt. at ¶¶ 39-42, 40.) Plaintiff further alleges he would not have purchased and paid a premium for Plain Kefir had he known Plain Kefir was not "99% lactose free." (*Id*. at ¶¶ 41, 60, 87.) Because Defendant effectively concedes that damages are sufficiently alleged if Plaintiff pled "he in fact paid more for the Plain Kefir because he believed it was 99% lactose free," (Memo. at 11) and the Complaint expressly alleges that Plaintiff "[paid] a premium because it was 99% lactose free," (Complt., ¶ 41) the inquiry must end there. Indeed, courts have consistently found such allegations sufficient to plead actual damages under the ICFA. *See, e.g., Aliano*, 115 F. Supp. 3d at 931 (damages sufficiently alleged where plaintiff pled he "paid more than [he] would have for the finished whiskey because of the deception"); *In re Horizon Organic Milk*, 955 F. Supp. 2d at 1334 (similar); *Stella*, 564 F. Supp. 2d at 836 (similar); *Muir*, 983 F. Supp. 2d at 991 (similar).

### D. Defendant had Notice of Plaintiff's Problems with Plain Kefir and, Accordingly, Plaintiff Was Not Required to Provide Notice.

Defendant contends Counts IV and V (breaches of express and implied warranty) should be dismissed because Plaintiff failed to comply with the Uniform Commercial Code's pre-suit notice requirement regarding Defendant's breaches of warranty. (Memo. at 12-14.) As an initial matter, Defendant's argument is an affirmative defense. A motion to dismiss based on an affirmative defense fails where "there is a conceivable set of facts, consistent with the complaint, that would defeat the defense." *McDonald v. Adamson*, 840 F.3d 343, 347 (7th Cir. 2016).

Here, Plaintiff alleges facts showing that he was not required to provide notice because Defendant had *actual knowledge* of the mislabeling. Under the UCC, a buyer normally must notify a seller of the troublesome nature of a transaction to recover for breach of warranty. 810 ILCS 5/2-607 (3)(A). However, where a seller has "actual knowledge" of the defect, the notice requirements

are met without any further affirmative action by the buyer. *In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 799–800 (N.D. Ill. 2016); *Hedges v. Earth, Inc.,* 2015 U.S. Dist. LEXIS 52318, *8 (N.D. Ill. 2015) (in context of a class action, sustaining warranty claims and finding "actual knowledge" where the alleged defect "necessarily applied to each and every pair of Exer-Walk shoes Earth sold because, according to the Complaint, Earth knows that none of these shoes can possibly do what Earth warrants they can do."); *Stella*, 564 F. Supp. 2d at 837 (same); *In re Rust-Oleum*, 155 F. Supp. 3d at 800-801 (same); *Keith v. Ferring Pharm., Inc.*, 2016 WL 5391224, at *6 (N.D. Ill. 2016) (same).

Defendant focuses its notice challenge on the language in *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996) wherein the court stated that the notice requirement meant that a manufacturer needed to be apprised of the trouble with a particular product purchased by a particular buyer. (Mem., at 12.) However, there is a distinction between *Connick*'s rejection of "generalized knowledge" of a risk of defect versus allegations that *all products* are defective. *See Hedges*, 2015 U.S. Dist. LEXIS 52318, *6-8 (distinguishing *Connick* and other cases).

Plaintiff's allegations plausibly show Defendant's actual knowledge that all Plain Kefir, including the Plain Kefir purchased by Plaintiff, was defective. Plaintiff alleges that Defendant directed and controlled the manufacturing of Plain Kefir, and therefore would have known through testing and manufacturing practices that *all units* of Plain Kefir are not "99% lactose free." (Complt. ¶¶ 19, 28, 59.) Moreover, Plaintiff alleges that Defendant funded a study through the Ohio State University that disclosed Defendant's kefir drinks contained approximately 4% lactose, and through this study, Defendant had actual knowledge that every unit sold of Plain Kefir was, in fact, not "99% lactose free." (*Id*. at ¶¶ 28-29.) These allegations are more than sufficient at the pleading stage to plausibly allege Defendant had actual knowledge of the breaches of warranty in

13

respect to all Plain Kefir sold.  Furthermore, the allegations sufficiently allege Defendant had actual knowledge of the defective Plain Kefir sold to Plaintiff because it is within the set of "all Plain Kefir sold."

Finally, because the goods sold by Defendant are for human ingestion, timely notice is not required because the notice requirements should be judged under a relaxed standard when the suit is brought by a retail consumer of the product. *See e.g., Keith*, 2016 WL 5391224, at *6 (observing same); *In re Hydroxycut Mktg. & Sales Practices Litig.,* 801 F. Supp. 2d 993, 1009 (S.D. Cal. 2011) (timely notice not required in consumer class action); *Neri v. R.J. Reynolds Tobacco Co.*, 2000 WL 33911224, at *19 (N.D.N.Y. 2000) (similar).

For these reasons, the Court should deny Defendant's motion to dismiss Counts IV and V.

### E. Defendant's Privity Argument as to Count V Ignores Well-Established Exceptions to the Privity Requirement.

Defendant argues that Count V (breach of implied warranty) should be dismissed for the additional reason that Plaintiff does not have privity with Defendant. (Memo. at 14.)  However, "there is no privity requirement [where] an article of food or drink ... is sold in a sealed container [;] [rather] an implied warranty is imposed on the manufacturer that the article was fit for that purpose, enabling a consumer to recover for the warranty's breach."  *Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 922 (N.D. Ill. 2013) (quotations omitted).  *See also Bietsch*, 2016 WL 1011512, at *6 (no privity required where product was food sold in a sealed container). Additionally, when a defendant markets a product directly to end users through statements on its label no privity is required. *See In re Rust-Oleum*, 155 F. Supp. 3d at 807 (no privity required when plaintiff is a known end-user to which defendant directly marketed its advertising and labels); *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 740 (W.D. Ky. 2013) (same).  Defendant's privity argument therefore fails.

### F. Plaintiff's Unjust Enrichment Claim May Proceed Because it is Pled in the Alternative.

Defendant argues that Plaintiff's unjust enrichment claim is inapplicable because express warranties create a specific contract which would displace an unjust enrichment claim. Defendant misstates the law. Under Federal Rule of Civil Procedure 8(e)(2), Plaintiff is within his right to plead claims in the alternative, which is exactly what he has done here. *See* Count VII; *see also Gubala,* 2016 WL 1019794, at *18 (declining to dismiss unjust enrichment claim pled in the alternative of warranty claims); *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F.Supp.2d 1069, 1116 (S.D. Ind. 2001) (same).

### G. Plaintiff's Prayer for Injunctive Relief is Valid.

Plaintiff's prayer for injunctive relief asks the Court to order Defendant to stop selling deceptively labeled Plain Kefir. (*See, e.g.,* Complt., ¶ 37.) Defendant urges the Court to dismiss Plaintiff's prayer for injunctive relief because now Plaintiff is aware that Plain Kefir is deceptively labeled, is not likely to be deceived again, and therefore is not likely to be harmed by the misleading practices in the future. (*See* Memo. at 15 relying on *Camasta v. Jos. A Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014).) However, courts in this Circuit have rejected Defendant's reading of *Camasta*, and found that individuals such as Plaintiff have standing to seek injunctive relief. *See Muir v. NBTY, Inc.*, 2016 WL 5234596, at *10 (N.D. Ill. 2016); *Le*, 160 F. Supp. 3d at 1111 (same). This Court should do the same.

Respectfully submitted,

ANDREW BLOCK

/s/ Gary M. Klinger
Gary M. Klinger (ARDC# 6303726)
**KOZONIS LAW, LTD.**
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630

Phone: 773.545.9607
Fax: 773.496.8617
gklinger@kozonislaw.com

-and-

Daniel R. Johnson (ARDC# 6283164)
Adam Waskowski (ARDC# 6284221)
Seth Yohalem (ARDC# 6284300)
**WASKOWSKI JOHNSON YOHALEM LLP**
954 W. Washington Blvd., Suite 720
Chicago, Illinois 60607
(312) 278-3153
djohnson@wjylegal.com
awaskowski@wjylegal.com
syohalem@wjylegal.com

*Attorneys for the Plaintiff, the Putative Classes, and Subclass*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Gary M. Klinger
Gary M. Klinger (ARDC# 6303726)
**KOZONIS LAW, LTD.**
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 773.545.9607
Fax: 773.496.8617
gklinger@kozonislaw.com