## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANDREW BLOCK, JOSEPH CABRERA *individually and on behalf of all others similarly situated*, | Case No. 1:17-cv-01717 |
| Plaintiffs, | Hon. Matthew F. Kennelly |
| v. | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| LIFEWAY FOODS, INC., an Illinois corporation, | JURY TRIAL DEMANDED |
| Defendant. | |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, ANDREW BLOCK and JOSEPH CABRERA, individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for their Second Amended Class Action Complaint against Defendant, Lifeway Foods, Inc. ("Lifeway"), allege the following based upon personal knowledge as to themselves and their own action, and, as to all other matters, respectfully allege, upon information and belief and investigation of their counsel, as follows:

## NATURE OF THE ACTION

1.     This is a class action case brought on behalf of all purchasers of Defendant Lifeway's Low Fat Kefir – Plain (unsweetened) (hereinafter the "Plain Kefir").  Through a fraudulent, unlawful, deceptive and unfair course of conduct, Defendant advertised, marketed, sold, and/or distributed Plain Kefir with the false representation that Plain Kefir is "99% lactose-free."  In reality, according to independent lab tests, Plain Kefir contains about as much lactose as that commonly found in "2% milk" sold in the dairy aisle of grocery stores.

2.     Defendant's labels and advertisements for Plain Kefir, including the representations made on Defendant's website, are false, deceptive and misleading, and violate almost every state warranty, consumer protection, and product labeling law in the United States.

3.     Plaintiffs now bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who from the applicable limitations period(s) up to and including the present, purchased for consumption and not for resale Defendant's Plain Kefir.  Defendant has deceived Plaintiffs and other consumers nationwide.  Through Defendant's unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Plain Kefir that it would not have otherwise earned.  Plaintiffs bring this action to stop Defendant's misleading practice.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than most Class Members.

5.     The Court has personal jurisdiction over Defendant because Defendant's headquarters are located in Illinois and Defendant regularly conducts business in this District.

6.     Venue is proper because a substantial portion of the events complained of occurred in this District.

## PARTIES

7.     Plaintiff, Andrew Block, is a citizen of the State of Illinois residing in the City of Algonquin, and is a member of one or more of the Classes defined herein.

8.     Plaintiff, Joseph Cabrera, is a citizen of the State of Florida residing in the City of Lake Worth, and is a member of one or more of the Classes defined herein.

2

9.  Plaintiffs and members of the Classes suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices of Defendant set forth in this Complaint. Plaintiffs and members of the Classes would not have purchased the Plain Kefir had they known it was *not* "99% lactose free."

10. Defendant, Lifeway, is an Illinois corporation with its principal office located in Morton Grove, Illinois.

## FACTUAL ALLEGATIONS

### *The Benefits of Products that Contain Little or No Lactose*

11. Lactose is the main sugar found in milk and other dairy products. Its absorption by the body occurs at the level of the small intestine and requires the presence of a sufficient quantity of intestinal lactase.[1]

12. According to the American Journal of Clinical Nutrition, cow milk, including whole, skim, low-fat and buttermilk, contains lactose in a range between 4 and 5%.[2]

13. There are a variety of health-related reasons for which a consumer chooses to purchase a dairy product that contains little or no lactose.

14. It has been estimated that as much as 75% of the world's population, including 25% of those living in the U.S., has some degree of lactose intolerance, which means that they are unable to fully digest the lactose in milk and other dairy products.[3]

---

[1] *See* https://www.fda.gov/forconsumers/consumerupdates/ucm094550.htm.

[2] *See* Nevin S. Scrimshaw and Edwina B. Murray: *"The Acceptability of Milk and Milk Products in Populations with a High Prevalence of Lactose Intolerance,"* American Journal of Clinical Nutrition, 1988;48:1080-1159.

[3] *See* https://www.fda.gov/forconsumers/consumerupdates/ucm094550.htm; *see also* http://www.pcrm.org/health/diets/vegdiets/what-is-lactose-intolerance.

15.     Individuals who are lactose intolerant have an adverse reaction to products containing lactose including abdominal bloating and cramps, flatulence, diarrhea, nausea and vomiting.  Individuals vary in the amount of lactose they can tolerate.  The severity of the symptoms typically increases with the amount of lactose consumed.[4]

16.     In addition to relieving the symptoms associated with "lactose intolerance," products that contain little or no lactose offer other benefits.  For example, lactose-free diets have been said to help reduce exposure to added antibiotics and hormones, which have been linked to an increase in the risk of cancer.[5]

17.     Furthermore, avoiding lactose can also help a person follow a "vegan diet," which consumers may adhere to for ethical reasons, but also for the health benefits associated with such a diet.[6]

18.     As the Food and Drug Administration explains, label reading is essential to determine how much lactose a product contains.  "This means a lactose-free product should not contain any lactose, and a lactose-reduced product should be one with a meaningful reduction."[7]

### Lifeway Falsely Claims the Plain Kefir is "99% Lactose Free"

19.     Lifeway is a publicly traded American health food company headquartered in Illinois that sells products such as smoothie drinks, cheese products, and supplements.

---

[4] *See* https://www.fda.gov/forconsumers/consumerupdates/ucm094550.htm; *see also* http://www.mayoclinic.org/diseases-conditions/lactose-intolerance/basics/symptoms/con-20027906.

[5] *See, e.g.,* http://www.pcrm.org/health/diets/vegdiets/health-concerns-about-dairy-products; http://news.bbc.co.uk/2/hi/health/4051331.stm; http://www.godairyfree.org/news/dairy-free-benefits.

[6] *See, e.g.,* http://www.peta.org/living/food/dairy-replacements/; https://happyherbivore.com/2013/07/what-is-lactose-intolerance-plant-based-vegan/.

[7] *See* https://www.fda.gov/forconsumers/consumerupdates/ucm094550.htm.

20. According to Lifeway, its mission is to provide the best probiotic and nutritious foods to improve the health of its customers.

21. Lifeway directs and controls all significant aspects of the sale of its well-known products, including the manufacturing, marketing, packaging, distribution, and pricing. The products are sold at thousands of stores throughout the United States and on consumer retail websites.

22. Lifeway's flagship product line is "kefir". According to Lifeway's most recent quarterly disclosure to its shareholders, kefir drinks accounted for approximately $80 million in sales for the nine months ended on September 30, 2016.[8]

23. As described on Lifeway's website, kefir is a tart and tangy cultured milk smoothie that is high in protein, calcium, and vitamin D.[9] At a price of approximately $2.50 for a 32-ounce bottle, consumers pay a high premium for Lifeway's "kefir" products than they otherwise would if they purchased a gallon (128-ounce) of regular milk at about the same price.

24. Included within Lifeway's "kefir" product line is the Plain Kefir. Lifeway falsely and deceptively advertises and markets the Plain Kefir, purportedly as an alternative to regular milk, as "99% lactose-free."

25. In order to pump up sales of its "kefir" products, and, in turn, the price of the company's stock for its shareholders, Lifeway boasts on its website that its unique fermentation process and specific kefir cultures "ensure" that all of its kefir, including the Plain Kefir, is 99% lactose-free:

---

[8] *See* http://quote.morningstar.com/stock-filing/Quarterly- Report/2016/9/30/t.aspx?t=:LWAY& ft=10-Q&d=ef98f3e42c3c6380e3c8d250969b4e28.

[9] *See* http://lifewaykefir.com/what-is-kefir/.



26. Similarly, with respect to the Plain Kefir, Lifeway falsely claims on its website that it is "99% lactose-free":



27. Likewise, Lifeway packages the Plain Kefir to look like an alternative to regular milk with a label that falsely claims the product is "99% lactose-free."



28.     Lifeway has even issued a statement that boasts why "[k]efir is 99% Lactose-Free."[10]  In that statement, Lifeway guarantees to consumers that its kefir products are 99% lactose-free "when you drink it."  *Id*.

29.     Contrary to these representations, Plain Kefir is **_not_** "99% lactose free."

30.     Moreover, Lifeway **_knew_** that Plain Kefir is not "99% lactose free" and that its labeling, advertising, and/or marketing was false and misleading.

31.     In fact, a study conducted at the Ohio State University - **_funded by Lifeway_** - disclosed that Lifeway's kefir drinks contained approximately 4% lactose.[11]

---

[10] *See* http://lifewaykefir.com/why-our-kefir-is-99-percent-lactose-free/.

[11] *See* Hertzler, J. Am Dietic Assoc. 2003.  *Lifeway improves lactose digestion and tolerance in adults with lactose maldigestion*.

32.     Moreover, Plaintiff's counsel had the Plain Kefir tested *on two separate occasions*. The first test established that Lifeway's Plain Kefir is not "99% lactose free," and instead contains close to 4% lactose – **only slightly lower than the lactose content percentage of that which is found in milk**. *See* Dkt. 6 at Exhibit A attached thereto.

33.     To confirm that test was not an aberration, Plaintiff's counsel again submitted a sample of the Plain Kefir to a laboratory for testing of its lactose content. This sample contained a different "batch" number than the previous sample submitted for testing. Once again, the test established that Defendant's Plain Kefir contains approximately 4% lactose. *See* Dkt. 6 at Exhibit B attached hereto.

34.     Despite clear evidence to the contrary, Lifeway falsely and misleadingly marketed, advertised, packaged, and/or sold the Plain Kefir to Plaintiff and the general public as "99% lactose free." The only conceivable purpose for falsely claiming the product is "99% lactose free" is to stimulate sales and enhance Lifeway's profits.

35.     Consumers are particularly vulnerable to these kinds of false and deceptive marketing practices. Most consumers are unable to verify that products such as Lifeway's Plain Kefir are, in fact, "99% lactose free." As set forth above, this is a material factor in consumers' purchasing decisions. Because of Lifeway's deceptive advertising practices, consumers were fraudulently induced to purchase Lifeway's Plain Kefir.

### *Lifeway's MisLabeling*
### *Violates Federal Labeling Requirements*

36.     Defendant's misleading statements violate 21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular."

37.     Since Defendant's Plain Kefir contains close to 4% lactose, Defendant's label includes the false statement that the Plain Kefir is "99% lactose free."

8

38.     Accordingly, Defendant's mislabeling of the Plain Kefir, which forms the basis of this lawsuit, constitutes a violation of 21 U.S.C. § 343.

39.     This lawsuit is not the first instance in which Lifeway has been accused of deception in the marketing and labeling of its goods.  In 2013, a lawsuit was filed claiming that a sugar ingredient was unlawfully identified on the labels of Lifeway's "kefir" yogurt drinks under California state law.  *See Robert E. Figy v. Lifeway Foods Inc.*, Case No. 13-cv-04828 in the U.S. District Court, Northern District of California.  Similarly, a 2012 Illinois lawsuit alleged that the company labeled various "kefir" products as containing benefits for various health conditions even though those claims had not been approved by the Food and Drug Administration.  *See Keatley v. Lifeway Foods, Inc.*, Caser No. 12-cv-3521 in the U.S. District Court, Northern District of Illinois. In fact, the FDA has previously warned Lifeway about mislabeling its kefir products.  *See* Exhibit C.  It is clear that Lifeway has a history of problems with advertising and the accuracy of its labels. Without injunctive relief, consumers – including Plaintiffs – could easily fall prey to such deceptive marketing tactics in the future.

### *Plaintiff Block's Experience with Lifeway's Plain Kefir*

40.     Plaintiff Block purchased a 32-ounce bottle of Lifeway's Plain Kefir for his own use (most recently in February of 2017) during the four years preceding the filing of this Complaint at a Jewel grocery store in McHenry County, Illinois.  He paid approximately $2.50 for his 32-ounce bottle of Plain Kefir.

41.     When Plaintiff Block purchased the Plain Kefir, he relied upon Lifeway's aforementioned representations that the Plain Kefir is "99% lactose free".  Similarly, when Plaintiff Block purchased the Plain Kefir, he purchased it because of the benefits of little to no lactose.  He was willing to pay a premium because it was "99% lactose free."

42.     Plaintiff Block later learned that Lifeway's Plain Kefir is not "99% lactose free." Plaintiff Block was deceived as a result of Lifeway's false and misleading marketing practices. Plaintiff Block believed he was buying a product that was "99% lactose free" when, in reality, he was purchasing a product that contained nearly as much lactose as that of regular milk.

### Plaintiff Cabrera's Experience with Lifeway's Plain Kefir

43.     Plaintiff Cabrera purchased multiple bottles of Lifeway's Plain Kefir for his own use (most recently in January of 2017) during the four years preceding the filing of this Complaint at a Publix grocery store in Palm Beach County, Florida.  He believes he paid approximately $3.00 for his bottle of Plain Kefir.

44.     When Plaintiff Cabrera purchased the Plain Kefir, he relied upon Lifeway's aforementioned representations that the Plain Kefir is "99% lactose free".  Similarly, when Plaintiff Cabrera purchased the Plain Kefir, he purchased it because of the benefits of little to no lactose.  He was willing to pay a premium because it was "99% lactose free."

45.     Plaintiff Cabrera later learned that Lifeway's Plain Kefir is not "99% lactose free." Plaintiff Cabrera was deceived as a result of Lifeway's false and misleading marketing practices. Plaintiff Cabrera believed he was buying a product that was "99% lactose free" when, in reality, he was purchasing a product that contained nearly as much lactose as that of regular milk.

### Lifeway Harmed Plaintiffs in a Manner Identical To the Manner in Which Lifeway Harmed the Class

46.     Plaintiffs are in the same Class as all other consumers who purchased Lifeway's Plain Kefir during the relevant time period.  Plaintiffs and the Class members were in fact misled by Defendant's misrepresentations in respect to the Plain Kefir.  Plaintiffs and Class members would have purchased other "99% lactose free" products, if any at all, if they had not been deceived by the misleading and deceptive labeling and advertising of the product by Lifeway.

## CLASS ACTION ALLEGATIONS

47.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

48.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.  The class definition(s) may depend on the information obtained throughout discovery.  Notwithstanding, at this time, Plaintiffs bring this action and seeks certification of the following Classes:

> **National Class:**  All persons within the United States who purchased and consumed the Plain Kefir from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

> **Consumer Fraud Multi-State Class:**  All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington and Wisconsin who purchased and consumed the Plain Kefir from the beginning of any applicable limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").[12]

> **Illinois Sub-Class:**  All persons in Illinois who purchased and consumed the Plain Kefir from the beginning of any applicable limitations period through the date of class certification (the "Illinois Sub-Class").

> **Florida Sub-Class:**  All persons in Florida who purchased and consumed the Plain Kefir from the beginning of any applicable limitations period through the date of class certification (the "Florida Sub-Class").

40.     Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents, employees and their legal

---

[12] The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201 *et seq.*); Illinois (815 ILCS 505/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A *et seq.*); Michigan (Mich. Comp. Laws § 445.901 *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010 *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, *et seq.*) and Wisconsin (WIS.  STAT. § 100.18, *et seq.*).

representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, Plaintiffs' counsel, their staff and immediate family.

49.     Plaintiffs reserve the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

50.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**.  The members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, Class Members number in at least the thousands.  The precise number of Class Members and their addresses are presently unknown to Plaintiffs, but may be ascertained from Defendant's books and records.  Class Members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

52.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**.  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Such common questions of law or fact include:

  a.  Whether the Plain Kefir is "99% lactose free";

  b.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Plain Kefir are deceptive;

  c.  Whether consumers paid a premium for Defendant's Plain Kefir;

  d.  Whether Defendant's actions violate the state consumer fraud statutes invoked below;

  e.  Whether Defendant's actions constitute common law fraud;

      f.      Whether Plaintiffs and Class members were damaged by Defendant's conduct;

      g.     Whether Defendant was unjustly enriched at the expense of Plaintiffs and Class members; and

      h.     Whether Plaintiffs and class members are entitled to injunctive relief.

53.     Lifeway engaged in a common course of conduct giving rise to the legal rights Plaintiffs seek to enforce, on behalf of themselves and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

54.     **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all Class Members were comparably injured through Lifeway's uniform misconduct described above. Further, there are no defenses available to Lifeway that are unique to Plaintiffs or to any particular Class Members.

55.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class Members they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and they will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and the undersigned counsel.

56.     **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1)**. Absent a representative class action, members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought

by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Lifeway. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

57. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**. Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole.

58. **Superiority – Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Lifeway, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if members of the Classes could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### Count I

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (On Behalf of the National Class)

59.     Plaintiffs incorporate by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

60.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq*., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce.  The ICFA is to be liberally construed to effectuate its purposes.  815 ILCS 505/11a.

61.     Defendant's conduct in representing its product as "99% lactose free" constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

62.     Lifeway intended that Plaintiffs and each of the members of the National Class would rely upon Lifeway's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

63.     Lifeway knew or should have known that its representations of fact concerning the Plain Kefir are material and likely to mislead consumers.

64.     Lifeway's practices, acts, and course of conduct in marketing and selling the Plain Kefir are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.  Like Plaintiffs, members of the National Class would not have purchased the Plain Kefir had they known that it was not "99% lactose free."

65.     Plaintiffs and members of the National Class have been directly and proximately damaged by Lifeway's actions.

15

66.     As a result of Lifeway's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the National Class have sustained damages in an amount to be proven at trial.

67.     In addition, Lifeway's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

68.     Moreover, Defendant's deceptive practices involving the Plain Kefir were designed, established, and initiated from Defendant's marketing and sales agents located at Defendant's corporate headquarters in Illinois and were designed to be uniformly relied upon by consumers nationwide when they purchased the Plain Kefir thereby implicating the legitimate interest of the State of Illinois in ensuring that entities within its jurisdiction operate in accordance with Illinois law.

69.     Therefore, Illinois has a legitimate interest in applying its law to adjudicate this dispute and to ensure that its residents comply with its consumer protection laws while serving Illinois and out-of-state consumers.

70.     Accordingly, Illinois law has significant contacts to the claims asserted by this class so that application of its consumer fraud laws to all class claimants is not arbitrary, capricious, or unfair and is not a violation of due process.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the National Class proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the National Class as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the National Class;

16

B.      Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.      Ordering Defendant to pay actual damages to Plaintiffs and the other members of the National Class;

D.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the National Class;

E.      Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiffs and the other members of the National Class;

F.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G.      Ordering such other and further relief as may be just and proper.

### Count II

**Violation of the State Consumer Fraud Acts**
**(In the Alternative to Count I and**
**On Behalf of the Consumer Fraud Multi-State Class)**

71.      Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

72.      The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

73.      Plaintiffs and the other members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class because Plaintiffs and members of the Class have suffered an injury in fact and lost money as a result of Lifeway's actions set forth herein.

74.      Lifeway intended that Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

75.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

76.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Consumer Fraud Multi-State Class proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the Consumer Fraud Multi-State Class as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the Consumer Fraud Multi-State Class;

B.     Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.     Ordering Defendant to pay actual damages to Plaintiffs and the other members of the Consumer Fraud Multi-State Class;

D.     Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Consumer Fraud Multi-State Class;

E.     Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiffs and the other members of the Consumer Fraud Multi-State Class;

F.     Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other members of the Consumer Fraud Multi-State Class;

G.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

H.     Ordering such other and further relief as may be just and proper.

**Count III**

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
(In the Alternative to Counts I and II and on behalf of the Illinois Sub-Class)**

77.     Plaintiff Block incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

78.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq*., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce.  The ICFA is to be liberally construed to effectuate its purposes.  815 ILCS 505/11a.

79.     Lifeway's conduct in representing its product as "99% lactose free" constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

80.     Lifeway intended that Plaintiff Block and each of the members of the Illinois Sub-Class would rely upon Lifeway's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

81.     Lifeway knew or should have known that its representations of fact concerning the Plain Kefir are material and likely to mislead consumers.

82.     Lifeway's practices, acts, and course of conduct in marketing and selling the Plain Kefir are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.  Like Plaintiff Block, members of the Illinois Sub-Class would not have purchased the Plain Kefir had they known that it was not "99% lactose free."

83.     Plaintiff Block and members of the Illinois Sub-Class have been directly and proximately damaged by Lifeway's actions.

84.     As a result of Lifeway's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Illinois Sub-Class have sustained damages in an amount to be proven at trial.

85.     In addition, Lifeway's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Block, individually and on behalf of the other members of the Illinois Sub-Class proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the Illinois Sub-Class as requested herein, designating Plaintiff Block as Class Representative, and appointing the undersigned counsel as Class Counsel for the Illinois Sub-Class;

B.     Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.     Ordering Defendant to pay actual damages to Plaintiff Block and the other members of the Illinois Sub-Class;

D.     Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other members of the Illinois Sub-Class;

E.     Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff Block and the other members of the Illinois Sub-Class;

F.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G.     Ordering such other and further relief as may be just and proper.

**Count IV**

**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**(In the Alternative to Counts I and II and on behalf of the Florida Sub-Class)**

86.     Plaintiff Cabrera incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

87.     The Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Fla. Stat. § 501.201 *et seq*., prohibits the use of unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.

88.     Lifeway's conduct in representing its product as "99% lactose free" constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

89.     Lifeway intended that Plaintiff Cabrera and each of the members of the Florida Sub-Class would rely upon Lifeway's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

90.     Lifeway knew or should have known that its representations of fact concerning the Plain Kefir are material and likely to mislead consumers.

91.     Lifeway's practices, acts, and course of conduct in marketing and selling the Plain Kefir are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.  Like Plaintiff Cabrera, members of the Florida Sub-Class would not have purchased the Plain Kefir had they known that it was not "99% lactose free."

92.     Plaintiff Cabrera and members of the Florida Sub-Class have been directly and proximately damaged by Lifeway's actions.

93.     As a result of Lifeway's use or employment of unfair or deceptive acts or business practices, Plaintiff Cabrera and each of the other members of the Florida Sub-Class have sustained damages in an amount to be proven at trial.

94.     In addition, Lifeway's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cabrera, individually and on behalf of the other members of the Florida Sub-Class proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.     Declaring that this action is a proper class action, certifying the Florida Sub-Class as requested herein, designating Plaintiff Cabrera as Class Representative, and appointing the undersigned counsel as Class Counsel for the Florida Sub-Class;

B.     Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.     Ordering Defendant to pay actual damages to Plaintiff Cabrera and the other members of the Florida Sub-Class;

D.     Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff Cabrera and the other members of the Florida Sub-Class;

E.     Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff Cabrera and the other members of the Florida Sub-Class;

F.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

G.     Ordering such other and further relief as may be just and proper.

<div align="center">

**Count V**

**Common Law Fraud**
**(On Behalf of the National Class and the Illinois and Florida Sub-Classes)**

</div>

95.     Plaintiffs incorporate by reference all of the paragraphs of this Complaint as if fully stated herein.

96.     Defendant made false statements and omissions of material facts, including, but not limited to Defendant's claim that the Plain Kefir is "99% lactose free".

97.     Defendant's false statements and omissions of material facts were made to Plaintiffs and the members of the National Class, the Illinois Sub-Class and the Florida Sub-Class (for purposes of this Count, the "Classes") at least each time that Plaintiffs and the members of the Classes purchased the Plain Kefir.  Defendant continues to make these false statements and omissions of material facts to Plaintiffs and members of the Classes.

98.     Defendant knew or should have known that these statements were false and that the omissions were material.  In the alternative, Defendant made these false statements and/or omissions without having any reasonable basis to believe they were true.

99.     Defendant intended that its false statements and omissions of material facts would induce Plaintiff and each of the members of the Classes to purchase the Plain Kefir.

100.     Plaintiffs and the members of the Classes relied on the false statements and omissions of material facts of Defendant.

101.     Plaintiffs and members of the Classes would not have purchased the Plain Kefir had it been accurately marketed, advertised, packaged and/or sold.

102.     Plaintiffs and Members of the Classes have been directly and proximately damaged by Defendant's false statements and omissions of material facts.

<div align="center">

23

</div>

103.    As a result of Defendant's false statements and omissions of material facts, Plaintiffs and each of the Members of the Classes have sustained damages in an amount to be proven at trial.

104.    In addition, Defendant's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.    Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.    Ordering Defendant to pay actual damages to Plaintiffs and the other members of the Classes;

D.    Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Classes;

E.    Ordering Defendant to pay reasonable attorneys' fees and litigation costs, as allowable by law, to Plaintiffs and the other members of the Classes;

F.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

G.    Ordering such other and further relief as may be just and proper.

**Count VI**

**Unjust Enrichment
(On Behalf of the National Class
and the Illinois and Florida Sub-Classes)**

105.    Plaintiffs incorporate by reference paragraphs 1 through 58 of this Complaint as if fully stated herein.

106.    Plaintiffs bring this claim against Lifeway on behalf of themselves, the National Class, the Illinois Subclass and the Florida Sub-Class (for purposes of this Count, the "Classes").

107.    Plaintiffs and the other members of the Classes conferred benefits on Lifeway by purchasing the Plain Kefir.

108.    Lifeway has been unjustly enriched in retaining the revenues derived from the purchases of the Plain Kefir by Plaintiff and the other members of the Classes.  Retention of those monies under these circumstances is unjust and inequitable because Lifeway's labeling of the Plain Kefir was misleading to consumers, which caused injuries to Plaintiffs and the other members of the Classes because they would not have purchased the product had they known the true facts, that the Plain Kefir was not "99% lactose free."

109.    Because Lifeway's retention of the non-gratuitous benefits conferred on it by Plaintiffs and the other members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the other members of the Classes for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

    A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the Classes;

    B.    Ordering Defendant to pay restitution to Plaintiffs and the other members of the Classes;

    C.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

    D.    Ordering such other and further relief as may be just and proper.

## Count VII[13]

### Breach of Express Warranties
### (In the Alternative to Count VI and on behalf of the National Class and the Illinois Sub-Class)

110.    Plaintiffs incorporate by reference paragraphs 1-58 of this Complaint as if fully stated herein.

111.    Plaintiffs bring this claim against Lifeway on behalf of himself, the National Class, and the Illinois Subclass (for purposes of this Count, the "Classes").

112.    Defendant made express warranties and representations regarding Plain Kefir, including, but not limited to, the following warranties:

    a.    The Plain Kefir is "99% lactose free" (warranty on product labels); and

    b.    The Plain Kefir is "99% lactose free" "when you drink it" (online).

113.    This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain between the parties and created a collective "express warranty" that Plain Kefir would conform to Defendant's affirmations and promises. Defendant is obligated under the terms of this express warranty to replace Plain Kefir sold to Plaintiffs and the Classes.

---

[13] Counts VII and VIII were dismissed by the Court in its Memorandum Opinion and Order (Dkt. 41) dated September 6, 2017 and are re-pled herein by Plaintiffs solely for purposes of preserving those claims on appeal.

114. Defendant breached express warranties about the Plain Kefir and its qualities because Defendant's statements about the Plain Kefir were false and the product does not conform to Defendant's affirmations and promises described above.

115. Plaintiffs and the members of the Classes would not have purchased the Plain Kefir had they known that it was not "99% lactose free."

116. Defendant's conduct described in this Complaint constitutes a breach of express warranties under UCC § 2-313, as adopted by the following state statutes:

Ala. Code § 7-2-313, et seq.; Alaska Stat. § 45.02.313, et seq.; Ariz. Rev. Stat. § 47-2313, et seq.; Ark. Code § 4-2-313, et seq.; Cal. Com. Code § 2313, et seq.; Colo. Rev. Stat. § 4-2-313, et seq.; Conn. Gen. Stat. § 42a-2-313, et seq.; 6 Del. C. § 2-313, et seq.; D.C. Code § 28:2-313, et seq.; Fla. Code § 672.313, et seq.; O.C.G.A. § 11-2-313, et seq.; Haw. Rev. Stat. § 490:2-313, et seq.; Idaho Code § 28-2-313, et seq.; 810 Ill. Comp. Stat. 5/2-313, et seq.; Ind. Code § 26-1-2-313, et seq.; Iowa Code § 554.2313, et seq.; Kan. Stat. § 84-2-313, et seq.; Ky. Rev. Stat. § 355.2-313, et seq.; La. Rev. Stat § 9:2800.53(6) , et seq.; 11 M.R.S.A. § 2-313, et seq.; Md. Code Ann., Com. Law § 2-313, et seq.; Mass. Code 106, § 2-313, et seq.; Mich. Comp. Laws 440.2313, et seq.; Minn. Stat. § 336.2-313, et seq.; Miss. Code § 75-2-313, et seq.; Mo. Rev. Stat. § 400.2-313, et seq.; Mont. Code § 30-2-313, et seq.; Neb. U.C.C. § 2-313, et seq.; Nev. Rev. Stat. § 104.2313, et seq.; N.H. Rev. Stat. § 382-A:2-313, et seq.; N.J. Stat. § 12A:2-313, et seq.; N.M. Stat. § 55-2-313, et seq.; N.Y. U.C.C. § 2-313, et seq.; N.C. Gen. Stat. § 25-2-313, et seq.; N.D. Cent. Code § 41-02-30, et seq.; Ohio Rev. Code § 1302.26, et seq.; Okla. Stat. Tit. 12A, § 2-313, et seq.; Or. Rev. Stat. § 72.3130, et seq.; 13 Pa. Cons. Stat. § 2313, et seq.; R.I. Gen. Laws § 6A-2-313, et seq.; S.C. Code § 36-2-313, et seq.; S.D. Codified Laws § 57A-2-313, et seq.; Tenn. Code § 47-2- 313, et seq.; V.T.C.A., Bus. & C. § 2.313, et seq.; Utah Code § 70A-2-313, et seq.; Vt. Stat. Tit. 9A, § 2-313, et seq.; Va. Code § 8.2-313, et seq.; Wash. Rev. Code § 62A.2-313, et seq.; W. Va. Code § 46-2-313, et seq.; Wis. Stat. § 402.313, et seq.; and Wyo. Stat. § 34.1-2-313, et seq.

117. As a result of Defendant's breach of warranty, Plaintiffs and each member of the Classes have been damaged in an amount equal to the purchase price of the product and/or in an amount to be determined at trial and any consequential damages resulting from their purchases.

118. Plaintiffs and the Classes were not required to notify Defendant of the breaches of warranty because the goods sold were for human ingestion. In addition, Plaintiffs and the Classes

were not required to notify Lifeway of the breaches of warranty because Lifeway had actual knowledge that the product did not conform to Lifeway's affirmations and promises described above. Indeed, the study *funded by Lifeway*, which disclosed that Lifeway's Plain Kefir is not "99% lactose free," illustrates Lifeway's actual knowledge that the product was not "99% lactose free." Moreover, Lifeway refused to acknowledge the aforementioned breaches and did not take any attempts to cure the breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the Classes;

B.    Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.    Ordering Defendant to pay damages to Plaintiffs and the other members of the Classes, including, but not limited to, damages resulting in the ordinary course of events from the sellers' breach as determined in any manner which is reasonable, and any incidental and consequential damages.

D.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

E.    Ordering such other and further relief as may be just and proper.

### Count VIII

**Breach of Implied Warranties**
**(In the Alternative to Count VI and on behalf of**
**the National Class and the Illinois Sub-Class)**

119.    Plaintiffs incorporate by reference paragraphs 1-58 of this Complaint as if fully stated herein.

120.     Plaintiffs bring this claim against Lifeway on behalf of themselves, the National Class, and the Illinois Subclass (for purposes of this Count, the "Classes").

121.     Defendant is in the business of manufacturing, supplying, marketing, advertising, warranting, and selling Plain Kefir.  Defendant impliedly warranted to Plaintiffs and members of the Classes that Plain Kefir was of a certain quality and was fit for its ordinary and particular purpose, i.e. "99% lactose free."

122.     Plaintiffs and members of the Classes relied on Defendant's written labels and advertisements for Plain Kefir.

123.     Plain Kefir was unfit for its ordinary use and was not of merchantable quality and/or did not conform to the promises or affirmations of fact made on the label, as warranted by Defendant, because it contained close to 4% lactose (about as much lactose as that contained in regular milk).  Prior to purchase, Plaintiffs and the members of the Classes could not have really discovered that the product was not fit for its ordinary purpose and did not conform to the quality previously represented.

124.     Similarly, Plain Kefir was unfit for its particular purpose.  At the time Plaintiffs and members of the Classes purchased Plain Kefir, Defendant knew or should have known that Plaintiffs and the members of the Classes would purchase and consume the Plain Kefir because it is labeled as "99% lactose free" and advertised as an alternative to regular milk.  However, Defendant's product was not suitable for this purpose at the point of sale because it contained close to 4% lactose (about as much lactose as that contained in regular milk).

125.     Accordingly, Plaintiffs and the members of the Classes did not receive the benefit of their bargain in purchasing the Plain Kefir.

126.     Defendant's conduct described in this Complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted by the following statutes:

> Ala. Code § 7-2-314, et seq.; Alaska Stat. § 45.02.314, et seq.; Ariz. Rev. Stat. § 47-2314, et seq.; Ark. Code § 4-2-314, et seq.; Cal. Com. Code § 2314, et seq.; Colo. Rev. Stat. § 4-2-314, et seq.; Conn. Gen. Stat. § 42a-2-314, et seq.; 6 Del. C. § 2-314, et seq.; D.C. Code § 28:2-314, et seq.; Fla. Code § 672.314, et seq.; O.C.G.A. § 11-2-314, et seq.; Haw. Rev. Stat. § 490:2-314, et seq.; Idaho Code § 28-2-314, et seq.; 810 Ill. Comp. Stat. 5/2-314, et seq.; Ind. Code § 26-1-2-314, et seq.; Iowa Code § 554.2314, et seq.; Kan. Stat. § 84-2-314, et seq.; Ky. Rev. Stat. § 355.2-314, et seq.; La. Rev. Stat § 9:2800.53(6) , et seq.; 11 M.R.S.A. § 2-314, et seq.; Md. Code Ann., Com. Law § 2-314, et seq.; Mass. Code 106, § 2-314, et seq.; Mich. Comp. Laws 440.2314, et seq.; Minn. Stat. § 336.2-314, et seq.; Miss. Code § 75-2-314, et seq.; Mo. Rev. Stat. § 400.2-314, et seq.; Mont. Code § 30-2-314, et seq.; Neb. U.C.C. § 2-314, et seq.; Nev. Rev. Stat. § 104.2314, et seq.; N.H. Rev. Stat. § 382-A:2-314, et seq.; N.J. Stat. § 12A:2-314, et seq.; N.M. Stat. § 55-2-314, et seq.; N.Y. U.C.C. § 2-314, et seq.; N.C. Gen. Stat. § 25-2-314, et seq.; N.D. Cent. Code § 41-02-30, et seq.; Ohio Rev. Code § 1302.26, et seq.; Okla. Stat. Tit. 12A, § 2-314, et seq.; Or. Rev. Stat. § 72.3130, et seq.; 13 Pa. Cons. Stat. § 2314, et seq.; R.I. Gen. Laws § 6A-2-314, et seq.; S.C. Code § 36-2-313, et seq.; S.D. Codified Laws § 57A-2-313, et seq.; Tenn. Code § 47-2- 314, et seq.; V.T.C.A., Bus. & C. § 2.314, et seq.; Utah Code § 70A-2-314, et seq.; Vt. Stat. Tit. 9A, § 2-314, et seq.; Va. Code § 8.2-314, et seq.; Wash. Rev. Code § 62A.2-314, et seq.; W. Va. Code § 46-2-314, et seq.; Wis. Stat. § 402.314, et seq.; and Wyo. Stat. § 34.1-2-314, et seq.

127.     Because of Defendant's breach of implied warranties, Plaintiffs and members of the Classes have been damaged in the amount of the purchase price of the Plain Kefir and/or in an amount to be determined at trial and any consequential damages resulting from their purchases.

128.     Plaintiffs and the Classes were not required to notify Defendant of the breaches of warranty because the goods sold were for human ingestion.  In addition, Plaintiff and the Classes were not required to notify Lifeway of the breaches of warranty because Lifeway had actual knowledge that the product did not conform to Lifeway's affirmations and promises described above.  Indeed, the study *funded by Lifeway*, which disclosed that Lifeway's Plain Kefir is not "99% lactose free," illustrates Lifeway's actual knowledge that the product was not "99% lactose free."  Moreover, Lifeway refused to acknowledge the aforementioned breaches and did not take any attempts to cure the breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

A.   Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the Classes;

B.   Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.   Ordering Defendant to pay damages to Plaintiffs and the other members of the Classes, including, but not limited to, damages resulting in the ordinary course of events from the sellers' breach as determined in any manner which is reasonable, and any incidental and consequential damages.

D.   Ordering Defendant to pay reasonable attorneys' fees and litigation costs, as allowable by law, to Plaintiffs and the other members of the Classes;

E.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

F.   Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.  Plaintiffs also respectfully request leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: September 15, 2017     Respectfully submitted,

               **ANDREW BLOCK &**
               **JOSEPH CABRERA**

               /s/ Gary M. Klinger
               Gary M. Klinger (ARDC# 6303726)
               Ryan F. Sullivan (ARDC# 6314103)
               **KOZONIS LAW, LTD.**
               4849 N. Milwaukee Ave., Ste. 300
               Chicago, Illinois 60630
               Phone: 773.545.9607
               Fax: 773.496.8617
               gklinger@kozonislaw.com
               rsullivan@kozonislaw.com

               -and-

               Daniel R. Johnson (ARDC# 6283164)
               Adam Waskowski (ARDC# 6284221)
               Seth Yohalem (ARDC# 6284300)
               **WASKOWSKI JOHNSON**
               **YOHALEM LLP**
               954 W. Washington Blvd., Suite 720
               Chicago, Illinois 60607
               (312) 278-3153
               djohnson@wjylegal.com
               awaskowski@wjylegal.com
               syohalem@wjylegal.com

               *Attorneys for the Plaintiffs, the Putative*
               *Classes, and Subclass*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

<div style="margin-left:50%">

/s/ Gary M. Klinger
Gary M. Klinger (ARDC# 6303726)
**KOZONIS LAW, LTD.**
4849 N. Milwaukee Ave., Ste. 300
Chicago, Illinois 60630
Phone: 773.545.9607
Fax: 773.496.8617
gklinger@kozonislaw.com

</div>